Elena SUHOMLIN, trading as The Block
Show Bar, et al.

v.

UNITED STATES of America et al.

UNITED STATES of America

v.

ONE 1971 BALTIMORE CITY LIQUOR
LICENSE NO. LB–D–7 579, et al.

UNITED STATES of America

v.

ONE 1971 BALTIMORE CITY LIQUOR
LICENSE NO. LB–D–7 414, et al.
(two cases).

UNITED STATES of America

v.

ONE 1971 BALTIMORE CITY LIQUOR
LICENSE NO. LD–341, et al.

UNITED STATES of America

v.

ONE 1971 BALTIMORE CITY LIQUOR
LICENSE NO. LBD–7, 270, et al.

UNITED STATES of America

v.

ONE 1971 BALTIMORE CITY LIQUOR
LICENSE NO. LD–303, et al.

UNITED STATES of America

v.

ONE 1971 BALTIMORE CITY LIQUOR
LICENSE NO. LD–347, et al.

UNITED STATES of America

v.

ONE 1971 BALTIMORE CITY LIQUOR
LICENSE NO. LB–D–7115, et al.

Civ. Nos. 71–567, 71–1421 to 71–1428.

United States District Court,
D. Maryland.

July 18, 1972.

Frank B. Cahn, II, Baltimore, Md., for Elena Suhomlin, Five-Eleven, Inc., 11 North Frederick Street, Inc., Jack Sugarman, Joan Sugarman, John Wilson Wood, and Inferno, Inc.

Alan I. Baron and Sachs & Baron, Baltimore, Md., for Saul Cantor, Gertrude Bergstein and Romaca, Inc.

Sidney Waldman, Baltimore, Md., for Nelson Walter Norwood.

Louis Hoffman and A. David Gomborov, Baltimore, Md., for Nickie Tipton, Margaret Napoli, Mayllison M. Bonandio, and 612 North Howard Street, Inc.

George Beall, U. S. Atty., D. Md., Charles L. Weintraub and David E. Holt, Jr., Sp. Attys., U. S. Dept. of Justice, for the United States.

HARVEY, District Judge:

On May 18, 19 and 20, 1971, agents of the Internal Revenue Service, armed with warrants signed by a United States Magistrate, entered various bars and night clubs in the City of Baltimore and seized liquor licenses, amusement licenses alcoholic beverages, cash and checks found on the premises.[1] Such property was seized pursuant to the government's claim that the owners of these establishments had not paid the federal retail liquor dealer's special tax of $54 per year, as required by 26 U.S.C. § 5121(a) and in violation of 26 U.S.C. § 5142(a).[2]

Under State law, a bar in the City of Baltimore may not operate without a license issued by the Board of Liquor License Commissioners of Baltimore City. The federal seizures therefore had the effect of closing down the various business establishments in question. The owner of the Block Show Bar promptly filed a civil action in this Court against various representatives of the government, seeking a temporary restraining order, a preliminary injunction and a permanent injunction requiring the return of the Bar's liquor license and other property which it was alleged had been illegally seized. The owners of various other bars and night clubs thereupon intervened, the case being docketed as Civil No. 71–567–H.

Following a hearing, this Court entered a temporary restraining order on May 24, 1971, restraining the government from withholding from the plaintiffs all liquor and amusement licenses seized by agents during the raids. The business establishments in question were thereby permitted to reopen. Such Order was subsequently extended, and following a later hearing on July 2, 1971, this Court denied the government's motion to dismiss the suit and granted the plaintiffs' motion for a preliminary injunction until the case could be tried on its merits. In orally ruling on these motions, this Court said the following (Transcript, 4–6):

"* * * It is the government's position, as stated by counsel in open court, that its agents, acting under various tax statutes and under warrants secured from a United States Magistrate, are empowered to seize and hold for indeterminate periods of time the plaintiffs' liquor licenses and that until the government administratively processes this alleged forfeited property, the owners thereof have no right to apply to a court, even though substantial business interests are thereby perhaps permanently and irreparably harmed.

"To state this assertion of government power is to expose its invalidity. There is no precedent whatsoever for what has been done here. Despite a full briefing by government counsel, no

---

1. Most but not all of the bars and night clubs were located on that portion of Baltimore Street known as "The Block."

2. § 5121(a): "Retail dealers in liquors.— Every retail dealer in liquors shall pay a special tax of $54 a year. The Secretary or his delegate may by regulations provide for the issuance of a stamp denoting payment of such special tax as—* * *." § 5142(a): "Condition precedent to carrying on business.—No person shall be engaged in or carry on any trade or business subject to tax under this part (except the tax imposed by section 5131) until he has paid the special tax therefor."

case has been produced in which government agents did what they claim to be able to do here. By unilateral action, without any proof of the unlawfulness of the claimed activity (which, incidentally, is the absence of a $54.00 tax stamp which has now been purchased by the plaintiffs), the government claims the right to close down these businesses until the government completes certain statutory administrative procedures, the duration of which cannot be calculated.

"At this stage of the proceedings, no civil action for forfeiture has been instituted. No criminal action has been commenced, much less tried.

"At this point then, the plaintiffs stand not even criminally charged, much less convicted, of the conduct that the government alleges to be illegal in pleadings in this case. Nor has there been any determination by any judicial officer that these allegations are true when tested by a civil standard of proof, in particular, the allegation that there has been a willful violation of the tax laws; and there can be no forfeiture without a finding of such a violation. Acting, then, on assertions and beliefs of its agents, the government claims the right, without interference by any court, to close down substantial businesses for an indefinite period of time. It even claims ownership of the licenses and as justification blithely states that this is a harsh statute.

"The exercise of such power without immediate and full judicial review, if conferred by the statutes relied upon by the government, would, in the opinion of this Court, be unconstitutional as violating the due process clause of the Fourteenth Amendment. With interests as substantial as those here involved, it is inconceivable that due process would permit the destruction of these property rights that would result from the government's unilateral action without some type of judicial review. This Court concludes that it has jurisdiction to temporarily en-

join such unconstitutional acts of the government agents who have been named here as defendants until a hearing can be held on the government's allegations of wrongful conduct by the plaintiffs and on the other issues presented.

"In reaching this conclusion there has been no attempt, of course, to rule on the merits of this case. The government should file an answer and should undertake at once the necessary administrative steps provided for by statute. * * * I would further think that the government, pursuant to the statute, should then file appropriate forfeiture actions either as counterclaims in this proceeding or as separate actions to be consolidated with this case hereafter. In such forfeiture actions, the various questions discussed in argument can be determined, including whether these licenses are in fact property and whether they were properly seized by the agents and are subject to forfeiture under applicable statutes."

Acting in accordance with this ruling, the government thereafter filed eight separate civil actions for forfeiture under 26 U.S.C. § 7302 of the property seized. All nine cases have now been consolidated and tried on their merits.

Substantially all of the essential facts have been stipulated by the parties, and several exhibits have been admitted in evidence including a copy of one of the applications submitted to and warrants executed by United States Magistrates Goetz and Klein. It is conceded by the bar owners that on the dates the seizures occurred they were engaged in the retail liquor business without having paid the special tax required by § 5121(a) and without having obtained the special tax stamp issued thereunder. On its part, the government has stipulated that for the purposes of this proceeding, it is not alleging that the failure to obtain the special tax stamp was a willful act of any of the parties. Nor is the government claiming in these civil actions that the bar owners were guilty of any other

violations of law besides their failure to obtain the special tax stamp required by § 5121(a). Since the seizures in question, the bar owners have paid the special tax due for the period July 1, 1970 through June 30, 1971, and have also paid such tax for subsequent years.

On this record, there remain for determination by the Court four questions of law which have been fully briefed and argued by the parties:

1. Is the case moot insofar as the liquor licenses are concerned because the licenses seized have now expired?

2. Did the inspections and seizures in question violate the Fourth Amendment rights of the bar owners?

3. Are the liquor licenses in question "property" within the meaning of 26 U.S.C. § 7302?

4. Is willfullness an element of these forfeiture proceedings brought pursuant to 26 U.S.C. § 7302?

Although all of these questions present interesting points for decision, this Court will address itself solely to the fourth, which raises a broader and more significant issue than do the others. As provided in the Pre-Trial Order, the government is not here alleging that the owners' failures to obtain the special tax stamps were willful acts. In other words, the government is asserting in these proceedings the right to achieve the forfeiture of property without the necessity of proving criminal knowledge or intent on the part of the property owner.

The statute in question provides as follows:

"§ 7302. Property used in violation of internal revenue laws

"It shall be unlawful to have or possess any property *intended* for use in violating the provisions of the internal revenue laws, or regulations prescribed under such laws, or which has been so used, and no property rights shall exist in any such property. A search warrant may issue as provided in chapter 205 of title 18 of the United States Code and the Federal Rules of Criminal Procedure for the seizure of such property. Nothing in this section shall in any manner limit or affect any criminal or forfeiture provision of the internal revenue laws, or of any other law. The seizure and forfeiture of any property under the provisions of this section and the disposition of such property subsequent to seizure and forfeiture, or the disposition of the proceeds from the sale of such property, shall be in accordance with existing laws or those hereafter in existence relating to seizures, forfeitures, and disposition of property or proceeds, for violation of the internal revenue laws." (Emphasis added)

Undoubtedly, it was at one time the law in this Circuit that the word "intended" in § 7302 did not refer to an intent to evade the tax but only to an intent to use the property in an activity with respect to which the required federal tax had not in fact been paid. United States v. Five (5) Coin-Operated Gaming Devices, 154 F.Supp. 731 (D.Md.1957), affirmed sub nom. Voglino v. United States, 253 F.2d 794 (4th Cir. 1958), cert. den. 357 U.S. 919, 78 S.Ct. 1359, 2 L.Ed.2d 1364 (1958). See also United States v. United States Currency in Amount of $2,813.37, 264 F.Supp. 394 (M.D.Pa.1966). The government here relies heavily on these cases and argues that the principles there stated permit confiscation of the property involved in these actions without the necessity of proving willful acts on the part of the property owners.

More recently, however, the Supreme Court has interpreted § 7302 quite differently in United States v. United States Coin & Currency, 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971). That case involved a civil forfeiture action, similar to those now before the Court, in which the government pressed, without success, substantially the same argument it advances here. There the government likewise contended that money was subject to forfeiture merely if it had been used in connection with an activity

with respect to which the federal tax had not been paid.

Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968) and Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968), had precluded the criminal conviction of gamblers who properly asserted their privilege against self-incrimination as a ground for their failure to comply with certain aspects of the gambling tax law. In *United States Coin & Currency, supra,* a convicted gambler, one Donald J. Angelini sought to assert his Fifth Amendment privilege in a civil forfeiture proceeding brought by the government to obtain some $8,674 which Angelini had in his posssession at the time of his arrest. In arguing that *Marchetti* and *Grosso* did not apply in that case, the government claimed that a forfeiture proceeding was essentially civil in nature and that just as it may collect taxes in a civil action, the government may also cause property to be forfeited in such a proceeding without offending principles that apply in criminal cases.

However, Mr. Justice Harlan pointed out in his opinion that the Supreme Court had recognized as early as Boyd v. United States, 116 U.S. 616, 634, 6 S.Ct. 524, 29 L.Ed. 746 (1886) that proceedings instituted for the purpose of declaring the forfeiture of a man's property by reason of offenses committed by him "though they may be civil in form, are in their nature criminal." (401 U.S. at 718, 91 S.Ct. at 1043). The government had sought to distinguish *Boyd* by arguing, as it does here, that the guilt of the owner of the property is irrelevant because § 7302 authorizes confiscation of property without requiring proof of criminal intent. This distinction was specifically rejected by the Supreme Court. Mr. Justice Harlan in reviewing the history of forfeiture law, observed that although the statute did not

specifically state that property shall be seized only if its owner significantly participated in the criminal enterprise, "we would not readily infer that Congress intended a different meaning." (401 U.S. at 719, 91 S.Ct. at 1044). He next observed that a forfeiture statute with the broad sweep suggested by the government would appear to raise "serious constitutional questions under that portion of the Fifth Amendment which commands that no person shall be 'deprived of * * * property, without due process of law; nor shall private property be taken for public use, without just compensation.'" (401 U.S. at 720, 91 S.Ct. at 1044). In summing up, the Court construed § 7302 and related statutory provisions as follows (401 at 720–721, 91 S.Ct. at 1045):

> "When the forfeiture statutes are viewed in their entirety, it is manifest that they are intended to impose a penalty *only upon those who are significantly involved in a criminal enterprise.*" (Emphasis added)

▬▬ In contrast to this interpretation of § 7302, the government here seeks forfeiture not because the bar owners violated 26 U.S.C. § 5691,[3] which makes it a crime to willfully fail to pay the special tax, but because they were not in compliance with 26 U.S.C. § 5142(a), which makes payment of the special tax a condition precedent to carrying on a business subject to such tax. Quite clearly *United States Coin & Currency* holds that no forfeiture penalty can be exacted unless the property owner has been significantly involved in a criminal enterprise. Without a showing of knowledge or willfullness, the property owners here cannot be found to have engaged in criminal conduct in failing to pay the special retail liquor dealer's tax due. Confiscation of their property therefore cannot be achieved by the government on

---

3. § 5691(a)—"Any person who shall carry on the business of a brewer, rectifier, wholesale dealer in liquors, retail dealer in liquors, wholesale dealer in beer, retail dealer in beer, limited retail dealer, or manufacturer of stills, and willfully fail to pay the special tax as required by law, shall be fined not more than $5,000, or imprisoned not more than 2 years, or both, for each such offense."

the record before the Court in this consolidated case.

In its brief, the government contends "that section 7302 subjects property to forfeiture if it is intended for use or has been used in violating the provisions of Title 26, and is not limited to property intended for use or which has been used to violate *criminal* provisions of the Internal Revenue Code." (Emphasis in original). The scope of such an interpretation of § 7302 is staggering. Under such a theory of the law, if the sole proprietor of a business underpaid his income taxes, the government would have the right to seize and confiscate *all* business property used in the production of income without being required to prove a willful violation of the tax law. Such a procedure would permit the imposition of a substantially larger monetary penalty for a non-willful violation than Congress has provided as a fine for a willful violation of the income tax laws. See 26 U.S.C. §§ 7201, 7202, 7203. The extent of the civil penalty would be measured by the value of the business property, while the fine for the more serious criminal offense would be fixed at the amount set forth in the statute. As Mr. Justice Harlan said in *United States Coin & Currency, supra,* 401 U.S. at page 718, 91 S.Ct. at page 1043:

> "From the relevant constitutional standpoint there is no difference between a man who 'forfeits' $8,674 because he has used the money in illegal gambling activities and a man who pays a 'criminal fine' of $8,674 as a result of the same course of conduct. In both instances, money liability is predicated upon a finding of the owner's wrongful conduct; * * *."

In this very case, the government is seeking a substantially greater monetary penalty from each property owner than could be imposed for a violation of the applicable criminal statute. One convicted of violating § 5691(a) is subject to imprisonment for a period of 2 years and a fine of $5,000. In these forfeiture proceedings, the government asks this Court to order the surrender by the property owners involved of their right to conduct retail liquor dealer businesses.[4] The monetary penalties sought in these civil cases are therefore many times the fines that could be imposed in criminal proceedings.

It should be noted that this case does not involve property which is contraband *per se* and the possession of which, without more, would constitute a crime. See One 1958 Plymouth Sedan v. Pennsylvania, 380 U.S. 693, 699, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965). Furthermore, there is here no continuing failure to pay the tax as the bar owners all immediately purchased the necessary federal tax stamps after the seizures. Nor is there any allegation in these forfeiture actions of any violation other than the initial failure of the bar owners to pay the special tax.

In finding in favor of the claimants in these cases, this Court is not holding that before property can be forfeited the owners must be convicted of a criminal violation. But here, claimants have been neither convicted in criminal proceedings nor proven in these civil proceedings to have been significantly involved (or otherwise involved) in criminal activity. The property owners here have done no more than violate civil tax law provisions. Since the Supreme Court has held that § 7302 is not intended to impose a penalty under circumstances such as these, this Court concludes that judgment should be entered in favor of each property owner in the forfeiture cases and that the government should be directed to return all the property previously seized to such owners.

An appropriate Order will be entered.

---

4. In addition, the forfeiture of cash, checks and bottled liquors is sought. Over $3500 in cash and checks was seized from the Oasis Nite Club, 511–521 E. Baltimore Street, during the raids. Some $7200 in checks was taken from the Talk of the Town, 1 N. Gay Street. Smaller amounts of cash were taken from the other claimants, and assorted bottles of liquor were removed from all the premises entered.