John C. CHILDS et al., Plaintiffs,

v.

Marshal McCORD, Chairman, et al., Defendants.

Civ. No. H–75–498.

United States District Court, D. Maryland.

Sept. 29, 1976.

Paul F. Strain, Joseph H. H. Kaplan and Arnold M. Weiner, Baltimore, Md., for plaintiffs Childs, Matz, Wolff and Whiteford.

H. Russell Smouse, Baltimore, Md., for plaintiff Weigand.

Robert J. Aumiller and John J. Lucas, Special Asst. Attys. Gen. and Francis B. Burch, Atty. Gen., Baltimore, Md., for state defendants.

Barnet D. Skolnik and Ronald S. Liebman, Asst. U. S. Attys., Baltimore, Md., for federal defendants.

ALEXANDER HARVEY, II, District Judge:

The five plaintiffs in this suit are presently licensed and registered as professional engineers with the Maryland Board of Registration for Professional Engineers and Professional Land Surveyors (hereinafter "the Board").[1] Having been charged by the Board with professional misconduct, plaintiffs have responded by filing a civil action in this Court, seeking injunctive and declaratory relief.[2]

Inasmuch as the charges pending before the Board arise out of the immunized testimony given by each plaintiff as a witness in a federal criminal case, the plaintiffs here claim that the proposed state disciplinary proceedings will violate the immunity conferred upon them pursuant to 18 U.S.C. §§ 6001–03 and will infringe upon their Fifth Amendment privilege against self-incrimination. Plaintiffs therefore seek (1) a declaratory judgment that their immunized testimony may not support, either directly or indirectly, any suspension, revocation or refusal to renew their individual certificates of registration as professional engineers, and (2) a permanent injunction restraining the Board from so using that testimony.[3] Named as defendants herein are the members of the Board, who are sued both individually and in their official capacities.[4] This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(3).[5]

The parties have stipulated to the essential facts. Although plaintiffs appeared and testified as government witnesses during the criminal trial of Dale Anderson before Judge Young and a jury in this Court, *United States v. Anderson*, Md., 368 F.Supp. 1253, none did so willingly or voluntarily. Having been subpoenaed by the government, each plaintiff appeared before Judge Young and, invoking his Fifth Amendment privilege, refused to give any testimony or present any evidence. Pursuant to motions filed by the United States Attorney under 18 U.S.C. § 6003, Judge Young then conferred immunity upon each plaintiff, pursuant to 18 U.S.C. § 6002.[6] Complying with the Court's orders, plaintiffs subsequently testified and implicated

1. The Board is part of the Maryland Department of Licensing and Regulations, Md.Ann. Code, Art. 75½, § 3.

2. Plaintiffs John C. Childs, Lester Matz, Jerome B. Wolff and Robert A. Whiteford originally filed this action individually and as representatives of a class. At the suggestion of the Court, the Attorney General notified other engineers of the pendency of this action and of their right to intervene. Subsequently, plaintiff Walter P. Weigand was granted leave to intervene. An Order was then entered granting plaintiffs' motion to withdraw their request that this suit be determined to be a class action.

3. Plaintiffs filed this suit on April 21, 1975, and by Order dated June 30, 1975, this Court enjoined the Board from taking any further action against plaintiffs pending a decision in this case.

4. The complaint also named as defendants certain federal officials who either were responsible for transcribing and authenticating plaintiffs' testimony or had possession of the transcripts. These defendants answered the complaint by stating that they "take no position, one way or the other, with respect to this lawsuit . . ." Since the plaintiffs and state defendants have now stipulated that the federal defendants have already provided an Assistant Attorney General of Maryland with authenticated transcripts for presentation to the Board, the claim against the federal defendants is now moot.

5. Plaintiffs originally requested that a three-judge court be convened. Following a hearing, this Court on September 12, 1975, granted the defendants' motion opposing the convening of a three-judge court.

6. Plaintiffs have not and on this record cannot complain that the government did not follow the statutory procedures for obtaining immunity for a witness. Thus, plaintiffs do not attack the propriety of the Orders granting them immunity.

themselves in certain fraudulent payments to Anderson.[7]

Thereafter, the Board ordered each plaintiff to appear and answer charges of professional misconduct which, as the Board concedes, "are based directly on the testimony and evidence [each] plaintiff . . . was compelled to give pursuant to [the federal immunity statute]." It is further agreed that at the impending administrative hearings on these charges, transcripts of the immunized testimony "will be offered into evidence as a basis for and in support of all charges brought by Orders of the Board . . . against plaintiffs pursuant to Article 75½, Section 17(a)(2) of the Annotated Code of Maryland . . ." In the event that a majority of the members of the Board votes in favor of sustaining the charges against any plaintiff, the Board is empowered to suspend, revoke or refuse to renew that plaintiff's certificate of registration. Md.Ann.Code, Art. 75½, § 17(e). Without such a certificate, an individual cannot practice engineering in Maryland. *Id.* at § 17A. Thus, each plaintiff is now faced with the prospect that he may no longer be entitled to continue his career as an engineer because of disclosures of professional misconduct made while testifying under a grant of immunity in a federal criminal trial.

Although plaintiffs' testimony was compelled under the federal immunity statute, the scope of the immunity thereby conferred does not, as plaintiffs suggest,[8] depend upon the statute itself. A statute may effectively displace the Fifth Amendment privilege against self-incrimination only by granting protection commensurate with that privilege. *Murphy v. Waterfront Commission,* 378 U.S. 52, 54, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964); *Counselman v. Hitchcock,* 142 U.S. 547, 587, 12 S.Ct. 195, 35 L.Ed. 1110 (1892).

Tracking the constitutional language, Section 6002 of the immunity statute prohibits the direct or indirect use of any testimony compelled thereunder "against the witness in any criminal case." 18 U.S.C. § 6002. The legislative history of this statute clearly reveals a congressional intent that a "statutory [claim of immunity] . . . be as broad as, but no broader than, the privilege against self-incrimination." H.R.Rep. No. 1549, 91st Cong., 2d Sess. 42 (1970); 1970 U.S.Code Cong. & Ad.News, pp. 4007, 4017. In *Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), the Supreme Court found that Congress had successfully accomplished this intention and thus upheld the constitutionality of the immunity statute. Commenting that "[w]hile a grant of immunity must afford protection commensurate with that afforded by the privilege, it need not be broader," the Court held the use proscription of Section 6002 to be "coextensive with the scope of the privilege against self-incrimination." *Id.* at 453, 92 S.Ct. at 1661. An immunized witness may, therefore, claim no greater protection than that accorded him by the Fifth Amendment. *United States v. DeDiego,* 167 U.S. App.D.C. 252, 511 F.2d 818, 822 (1975). Thus, whether the testimony given by these plaintiffs under Section 6002 may be used in administrative proceedings before the Board presents a constitutional question, not one of statutory interpretation.

The self-incrimination clause of the Fifth Amendment, now fully applicable to the states through the Fourteenth Amendment, *Malloy v. Hogan,* 378 U.S. 1, 8–11, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964), quite simply provides that no person "shall be compelled in any criminal case to be a witness against himself." By its terms, this clause does "not necessarily protect witness-

---

**7.** Anderson was subsequently convicted and sent to prison. His conviction was affirmed by the United States Court of Appeals for the Fourth Circuit. 506 F.2d 1398 (4th Cir. 1974), *cert. den.* 420 U.S. 991, 95 S.Ct. 1427, 43 L.Ed.2d 672 (1975).

**8.** Noting that earlier federal immunity statutes protected a witness from any "penalties or forfeitures" as well as "answering criminally," plaintiffs argue that the present statute is equally as broad. The legislative history of the present immunity statute does not support such an argument.

es against every possible detriment which might happen to them from their testimony . . . ." *Brown v. Walker,* 161 U.S. 591, 596, 16 S.Ct. 644, 646, 40 L.Ed. 819 (1896). Rather, the clause "insure[s] that a person should not be compelled, when acting as a witness in any investigation, to give testimony which might tend to show that he himself had committed a crime." *Counselman v. Hitchcock, supra,* 142 U.S. at 563, 12 S.Ct. at 198; *accord, Lefkowitz v. Turley,* 414 U.S. 70, 77, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973). The Supreme Court has determined that the "sole concern [of the self-incrimination clause] is, as its name indicates, with the danger to a witness forced to give testimony leading to the infliction of 'penalties affixed to the criminal acts . . . ,'" *Ullmann v. United States,* 350 U.S. 422, 438–39, 76 S.Ct. 497, 507, 100 L.Ed. 511 (1956) (quoting from *Boyd v. United States,* 116 U.S. 616, 634, 6 S.Ct. 524, 29 L.Ed. 746 (1886)); *accord, Kastigar v. United States, supra,* 406 U.S. at 453, 92 S.Ct. 1653. This danger is not restricted to the subsequent use of the testimony by the compelling sovereign. In *Murphy v. Waterfront Commission, supra,* 378 U.S. at 77–78, 84 S.Ct. at 1609, the Court held "that the constitutional privilege against self-incrimination protects a state witness against incrimination under federal as well as state law and a federal witness against incrimination under state as well as federal law."

The basic question before the Court in this case therefore is whether a disciplinary proceeding before a State administrative agency empowered to revoke a registrant's right to practice his profession amounts to a "criminal case" within the meaning of the Fifth Amendment. An affirmative answer would entitle plaintiffs to the relief prayed for in their complaint, while a negative one would permit the Board, consistent with the Fifth Amendment, to consider the plaintiffs' immunized testimony in the pending administrative proceedings. For the reasons hereinafter stated, this Court finds that a hearing before the Board to determine the fitness of a professional engineer to continue in that profession is not a crimi-

nal case for purposes of the privilege against self-incrimination.

In support of their position here, plaintiffs rely mainly on two Supreme Court cases decided in the last century, namely *Boyd v. United States,* 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886), and *Lees v. United States,* 150 U.S. 476, 14 S.Ct. 163, 37 L.Ed. 1150 (1893). Characterizing as a "penalty" the revocation by the Board of their certificates as professional engineers, plaintiffs argue that a disciplinary hearing is the type of criminal proceeding contemplated by *Boyd* and *Lees.*

Although extending the Fifth Amendment privilege against self-incrimination to cases other than standard criminal prosecutions, *Boyd* and *Lees* nevertheless require that the proceeding be "unquestionably criminal in nature" before "a defendant cannot be compelled to be a witness against himself." *Lees v. United States, supra,* 150 U.S. at 480, 14 S.Ct. at 165. Thus, in *Boyd,* the plaintiff sued for the recovery of goods claimed by the government to have been forfeited because they were illegally imported. The Court held that such claimant could not be ordered to produce his own records for the government's inspection. Since the statutes under which the government had initially proceeded declared certain acts to be criminal and prescribed penalties, including forfeitures, for the commission of such acts, the Supreme Court concluded "that proceedings instituted for the purpose of declaring the forfeiture of a man's property by reason of offenses committed by him, though they may be civil in form, are in their nature criminal." 116 U.S. at 633–34, 6 S.Ct. at 534. Reasoning that the government could also have obtained forfeitures of the goods by proceeding against the claimants by way of a criminal indictment, the Court then said the following (at 634, 6 S.Ct. at 534):

If the government prosecutor elects to waive an indictment, and to file a civil information against the claimants (that is, civil in form) can he by this device take from the proceeding its criminal aspect and deprive the claimants of their

immunities as citizens, and extort from them a production of their private papers, or, as an alternative, a confession of guilt? This cannot be. The information, though technically a civil proceeding, is in substance and effect a criminal one . . . As, therefore, suits for penalties and forfeitures, incurred by the commission of offenses against the law, are of this *quasi-criminal* nature, we think that they are within the reason of criminal proceedings for . . . that portion of the fifth amendment which declares that no person shall be compelled in any criminal case to be a witness against himself . . .

■ *Boyd* thus establishes that a prosecutor may not circumvent a person's privilege against self-incrimination by invoking a civil remedy to enforce a criminal statute. To the same effect is *Lees v. United States, supra,* 150 U.S. at 479–81, 14 S.Ct. 163, where the Court, relying upon *Boyd,* held that a civil proceeding to recover a penalty for violation of an act prohibiting importation of certain aliens was criminal in nature. More recently, in *United States v. United States Coin & Currency,* 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971), the Supreme Court once again emphasized that the self-incrimination clause of the Fifth Amendment, as interpreted in *Boyd,* permits no distinction between one who forfeits property because used in illegal activity and one who pays a criminal fine because of the same conduct. In both instances, the Court concluded that "money liability is predicated upon a finding of the owner's wrongful conduct; in both cases, the Fifth Amendment applies with equal force." *Id.* at 718, 91 S.Ct. at 1043. *See also Suhomlin v. United States,* 345 F.Supp. 650, 654 (D.Md.1972).

The Supreme Court's opinion in *Ullmann v. United States, supra,* further demonstrates that the holding in *Boyd* was based

on facts involving the enforcement of a criminal statute by means of a civil proceeding. Despite a grant of immunity, the petitioner in *Ullmann* had persisted in his refusal to testify before a grand jury investigating espionage and Communism and had then been found to be in contempt of court. Challenging the constitutionality of the immunity statute under which the government sought to compel his testimony, the petitioner there argued that the immunity conferred by statute was insufficient because it would not protect him from "disabilities . . . such as loss of job, expulsion from labor unions, state registration and investigation statutes, passport eligibility, and general public opprobrium . . ." 350 U.S. at 430, 76 S.Ct. at 502. Unpersuaded by this argument, the Court in its majority opinion quoted the following language from *Hale v. Henkel,* 201 U.S. 43, 67, 26 S.Ct. 370, 50 L.Ed. 652 (1906):

> "The interdiction of the 5th Amendment operates only where a witness is asked to incriminate himself,—in other words, to give testimony which may possibly expose him to a criminal charge. But if the criminality has already been taken away, the amendment ceases to apply."

350 U.S. at 431, 76 S.Ct. at 502. Leaving *Boyd* "unqualified", *Id.* at 439, 76 S.Ct. 497, the Court went no further than to recognize that upon the imposition of a particular sanction, petitioner has "the right to claim that it is criminal in nature," *Id.* at 431, 76 S.Ct. at 503.

That the majority in *Ullmann* did not consider the disabilities mentioned by the petitioner there to be in fact criminal in nature is quite apparent from the dissenting opinion of Mr. Justice Douglas. *Id.* at 440, 76 S.Ct. 497. Pointing out that the majority opinion would allow the discharge of a government employee on the basis of testimony immunized from criminal prosecution,[9] Mr. Justice Douglas would have

---

9. Alternatively, the dissent hypothesized that "[t]he Court may mean that if disqualification for government employment or ineligibility for a passport is a forfeiture within the meaning of the *Boyd* case, Congress has lifted these disabilities in exchange for the witness' testimony."

350 U.S. at 442, 76 S.Ct. at 509. Mr. Justice Douglas then recognized that Congress, in passing the immunity statute, had not intended such a result and concluded that "[i]f the disabilities which attach under existing law are forfeitures, the Court should strike down th~

held the immunity statute unconstitutional under the principles of *Boyd* because "[t]he loss of a job and the ineligibility for a passport are also penalties affixed to a criminal act." *Id.* at 442, 76 S.Ct. at 508. Since the Court in *Ullmann* did not accept this minority view, *Boyd* cannot, as plaintiffs argue, be read as securing an immunized witness from all disabilities, including loss of employment, which might arise as a result of his compelled testimony. Rather, *Boyd* and the other forfeiture cases do no more than extend the Fifth Amendment privilege to proceedings which, although civil in form, involve the enforcement of a statute "intended to impose a penalty only upon those who are significantly involved in a criminal enterprise." *United States v. United States Coin & Currency, supra,* 401 U.S. at 721–22, 91 S.Ct. at 1045.

■ That plaintiffs will suffer adverse consequences if they lose their right to practice their profession is clear. But the denial of that right by the Board would not amount to the imposition of a criminal sanction. Moreover, the fact that plaintiffs' compelled admissions of criminal conduct would support the charges pending before the Board would not transform the proposed disciplinary hearings into "criminal cases". *See Boulware v. Battaglia,* 344 F.Supp. 889, 901 (D.Del.1972), *aff'd without opinion,* 478 F.2d 1398 (3d Cir. 1973).

In *Tippett v. Maryland,* 436 F.2d 1153 (4th Cir.), *cert. granted sub nom. Murel v. Baltimore City Criminal Court,* 404 U.S. 999, 92 S.Ct. 567, 30 L.Ed.2d 552 (1971), *writ*

dismissed as improvidently granted, 407 U.S. 355, 92 S.Ct. 2091, 32 L.Ed.2d 791 (1972), the Fourth Circuit held that Maryland's defective delinquency law, requiring certain convicted persons to undergo a psychiatric examination which might result in extended confinement, did not conflict with the privilege against self-incrimination. In so holding, the Court concluded that defective delinquency proceedings were civil, not criminal, in nature and said the following: "Although criminal conduct is necessarily bound up in every case, the inquiry does not focus on particular criminal acts but on the mental and emotional condition of the person . . ." 436 F.2d at 1157; compare *Id.* at 1162 N.7 (Sobeloff, J., concurring and dissenting) *with In re Gault,* 387 U.S. 1, 47–50, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). Similarly, although criminal conduct may be involved in disciplinary proceedings before the Board, the focus is upon a registrant's fitness to continue as a professional engineer rather than upon the criminality of his prior acts. Thus, the grounds for suspension, revocation or non-removal of a certificate are not defined in terms of or necessarily the result of criminal conduct by the registrant. *See* Md.Ann.Code, Art. 75½, § 17. Under such circumstances, "the denomination of the proceedings as civil rather than criminal is not a semantic exercise but a factual description of what occurs." *Tippett v. Maryland, supra* at 1157.[10]

The purpose of requiring and thus the reason for revoking a certificate of registration for professional engineers, as de-

---

Act." *Id.* Instead, the Court upheld the constitutionality of the immunity statute.

**10.** Nothing in *In re Ruffalo,* 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968), or *Spevack v. Klein,* 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967), compels a contrary conclusion. Neither decision purports to decide whether disciplinary proceedings are "criminal cases" for purposes of the Fifth Amendment privilege. In *Ruffalo,* the Court considered only whether an attorney was entitled to procedural due process, including fair notice of the charge, before being disbarred. The denomination of disbarment proceedings as "quasi-criminal in nature" was not material to the decision, for, as the Court observed, the procedural defect there

" 'would never pass muster in any normal *civil or criminal litigation.*' " 390 U.S. at 551, 88 S.Ct. at 1226 (emphasis added). Rather than ruling that a disbarment proceeding was a criminal case, the Court in *Spevack* ruled that a court may not impose upon an attorney "the dishonor of disbarment . . . as a price for asserting [the privilege against self-incrimination]." 385 U.S. at 514, 87 S.Ct. at 627. This decision therefore does not turn upon the nature of the disciplinary proceedings but upon the form of compulsion exerted upon an attorney to waive his Fifth Amendment privilege. *Id.* at 516, 87 S.Ct. 625. *See Garrity v. New Jersey,* 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967), discussed *infra.*

clared by the Maryland statute, is "to safeguard life, health and property, and to promote the public welfare . . . ." Md. Ann.Code, Art. 75½, § 1. Since *Dent v. West Virginia,* 129 U.S. 114, 122, 9 S.Ct. 231, 233, 32 L.Ed. 623 (1889), the Supreme Court has acknowledged the power of a state "to provide for the general welfare of its people" by establishing licensing requirements for various professions and by "prescrib[ing] all such regulations, as, in its judgment, will secure or tend to secure [the people] against the consequences of ignorance and incapacity as well as deception and fraud." *See also Williamson v. Lee Optical Co.,* 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955).

Maryland has here legislatively determined that a registered professional engineer who "[h]as committed any . . . misconduct in the practice of engineering" is not worthy of public trust and that therefore his certificate may be suspended, revoked or not renewed by the Board. Md. Ann.Code, Art. 75½, § 17(a)(2). Whether the disclosures made by plaintiffs in their compelled testimony amount to professional misconduct is for the Board, not this Court, to decide. If it finds such misconduct, the Board has no authority to imprison a plaintiff, to find him or to impose any other criminal sanction. Rather than enforcing a criminal statute, the Board if it acts will be exercising the power of the State to protect its citizenry from fraud and deception and will be endeavoring to preserve public confidence in the integrity of the engineering profession. Any revocation order by the Board would thus be remedial rather than punitive in nature. *See Hawker v. New York,* 170 U.S. 189, 200, 18 S.Ct. 573, 42 L.Ed. 1002 (1968); *Wright v. SEC,* 112 F.2d 89, 94 (2d Cir. 1940).

When presented with the precise claim advanced herein by plaintiffs, other courts,

both federal and state, have reached a similar conclusion and have held that immunized testimony may be introduced as evidence in a disciplinary proceeding without offending the Fifth Amendment.[11] *Cf. Baxter v. Palmigiano,* 425 U.S. 308, 316, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976) (holding that prison disciplinary hearings are not criminal proceedings). In *Napolitano v. Ward,* 457 F.2d 279 (7th Cir.), *cert. denied,* 409 U.S. 1037, 93 S.Ct. 512, 34 L.Ed.2d 486 (1972), a state judge challenged the constitutionality of his removal from the bench which had resulted from his immunized testimony before a grand jury. Finding no violation of the self-incrimination clause, the Seventh Circuit emphasized that the plaintiff "has suffered no criminal punishment resulting from his immunized testimony nor was the removal herein a penal aspect of criminal proceedings." *Id.* at 284. Similar reasoning was recently employed by the Maryland Court of Appeals in *Maryland State Bar Association v. Sugarman,* 273 Md. 306, 329 A.2d 1 (1974), *cert. denied,* 420 U.S. 974, 95 S.Ct. 1397, 43 L.Ed.2d 654 (1975), a case involving attorney disciplinary proceedings. *Accord, Committee on Legal Ethics of the West Virginia State Bar v. Graziani,* 200 S.E.2d 353, 355–56 (W.Va.), *cert. denied,* 416 U.S. 995, 94 S.Ct. 2410, 40 L.Ed.2d 774 (1973); *In re Schwarz,* 51 Ill.2d 334, 282 N.E.2d 689, 691, *cert. denied,* 409 U.S. 1047, 93 S.Ct. 527, 34 L.Ed.2d 499 (1972); *In re Zuckerman,* 20 N.Y.2d 430, 285 N.Y.S.2d 1, 231 N.E.2d 718, 721 (1967), *cert. denied,* 390 U.S. 925, 88 S.Ct. 856, 19 L.Ed.2d 985 (1968).

In *Sugarman,* the Maryland Court disbarred an attorney (also a reluctant witness at the *Anderson* trial) for professional misconduct revealed by his immunized testimony. The Court found no conflict with the Fifth Amendment privilege because disbarment " 'is not by way of punishment; but

---

11. Plaintiffs' reliance upon *Lurie v. Florida State Bd. of Dentistry,* 288 So.2d 223 (Fla. 1974), as holding to the contrary, is misplaced. Although excluding immunized testimony from a disciplinary proceeding, the Florida Court's opinion in that case was apparently based upon

the breadth of the state immunity statute rather than upon the Fifth Amendment. Specifically, in *Lurie,* the Court overruled its own prior construction of the statute in *Headley v. Baron,* 228 So.2d 281 (Fla.1969).

**436**

the court, on such cases, exercise their discretion whether a man whom they have formerly admitted, is a proper person to be continued on the roll or not.'" 273 Md. at 314, 329 A.2d at 5 (quoting from Judge Cardozo's opinion in *In re Rouss,* 221 N.Y. 81, 116 N.E. 782, 783 (1917)); *accord, Maryland State Bar Association v. Wolff,* Misc. No. 5499 (Md.Ct. of Ap., April 10, 1975) (disbarring plaintiff Wolff). The views expressed by the Maryland Court of Appeals and by these other Courts are equally applicable here. There is no meaningful distinction between disciplinary proceedings before the Board for revocation of a professional engineer's certificate of registration and proceedings for the removal of a judge or the disbarment of an attorney.

Plaintiffs further argue that *Garrity v. New Jersey,* 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967), and its progeny [12] require the exclusion of immunized testimony from disciplinary proceedings. This Court would disagree. This line of authority does no more than prevent the State from coercing "a waiver of the immunity [which the self-incrimination clause] confers on penalty of the loss of employment." *Gardner v. Broderick,* 392 U.S. 273, 279, 88 S.Ct. 1913, 1916, 20 L.Ed.2d 1082 (1968); *accord, Baxter v. Palmigiano, supra,* 425 U.S. at 317, 96 S.Ct. 1551. Thus, state employees or registrants "may be compelled to respond to questions about the performance of their duties . . . if their answers cannot be used against them in subsequent criminal prosecutions." *Lefkowitz v. Turley, supra,* 414 U.S. at 79, 94 S.Ct. at 323. Rather than prohibit disciplinary action based on compelled testimony, these decisions do no more than require that the employee have first been immunized from future criminal prosecution. *See Lefkowitz v. Turley, supra* at 84–85, 94 S.Ct. 316; *Gardner v. Broderick,*

*supra,* 392 U.S. at 278, 88 S.Ct. 1913; *Uniformed Sanitation Men Association, Inc. v. Commissioner of Sanitation,* 392 U.S. 280, 285, 88 S.Ct. 1917, 20 L.Ed.2d 1089 (1968). Once the employee has been granted immunity, as here, he is no longer presented with the choice condemned in *Garrity,* namely "either to forfeit [his] job[ ] or to incriminate [himself]." 385 U.S. at 497, 87 S.Ct. at 618. In *Baxter v. Palmigiano, supra,* 425 U.S. at 318, 96 S.Ct. 1551, the Supreme Court ruled that, while *Garrity* would shield against future criminal prosecution if an employee refused to waive his privilege and testify, it would not protect from suspension of his privileges an inmate called to testify in a prison disciplinary proceeding because the latter was not a criminal case. Thus, *Garrity* and the other cases cited are inapplicable here because plaintiffs were granted immunity under 18 U.S.C. § 6002 *before* they testified at the *Anderson* trial.

For the reasons stated, this Court concludes that the use of plaintiffs' immunized testimony at pending proceedings before the Board will not violate the immunity conferred upon them by federal statute and will not violate their Fifth Amendment privilege against self-incrimination. Accordingly, judgment is hereby entered in favor of the defendants, with costs.

---

**12.** *Lefkowitz v. Turley,* 414 U.S. 70, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973); *Gardner v. Broderick,* 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968); *Uniformed Sanitation Men Ass'n, Inc. v. Commissioner of Sanitation,* 392 U.S. 280, 88 S.Ct. 1917, 20 L.Ed.2d 1089 (1968); *Spevack v. Klein,* 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967).