384 So.2d 1315 (1980)
CITY OF HOLLYWOOD and Civil Service Board of the City of Hollywood, Appellants,
v.
James WASHINGTON, Appellee.
No. 78-1871.
District Court of Appeal of Florida, Fourth District.
June 18, 1980.
As Amended July 22, 1980.
Sherman Bennett Mayor, City Atty., James A. Thomas, Deputy City Atty., and Andrew De Graffenreidt, III, Asst. City Atty. Hollywood, for appellants.
Alan H. Konigsburg of Mavrides, Latimer, Shamres, Konigsburg & Platt, P.A., Fort Lauderdale, for appellee, James Washington.
HERSEY, Judge.
In July of 1977, appellee, James Washington, received written notification from the Chief of the Hollywood Fire Department that his employment had been terminated. Appellee was given a hearing before the Civil Service Board of the City of Hollywood in September of 1977. A majority of the Civil Service Board confirmed termination of appellee's employment, whereupon appellee petitioned for writ of certiorari to the Circuit Court. A final order was entered reversing the action of the Civil Service Board and requiring the reinstatement of appellee Washington. *1316 The City of Hollywood seeks review of this order.
Testimony elicited before the Civil Service Board provides the basis for the factual background upon which this Court must base its decision. The transcript of that proceeding discloses that appellee was a permanent civil service employee of the City of Hollywood Fire Department. Appellee reported late for work on a morning in March of 1977. He then requested reassignment to another station house in order to avoid further contact with individuals who lived in the area of the stationhouse to which he was assigned. He alleged that he and another fireman had been abducted by these individuals, who apparently believed that appellee and the other fireman had some knowledge concerning a substantial drug theft. Appellee's allegations were brought to the attention of the Chief of the Hollywood Fire Department, who then arranged with the Chief of the Hollywood Police Department to have a police officer assigned to investigate the kidnapping and the possible involvement of drugs. The Fire Chief arranged for an officer of the fire department to drive appellee to the police station to take part in an interview. As a result appellee met with one Sergeant Anthony Alderson in the police station on April 6, 1977. Sergeant Alderson indicated to appellee that he was in the process of investigating the drug aspects of the abduction. He explained appellee's right to remain silent, whereupon appellee declined to give a "formal statement." Sergeant Alderson gives the following explanation of the sequence of events that followed:
After giving his Miranda warning and after him refusing to waive his Miranda warning I then informed him any conversation that transpired between us would not be used in a court of law against him, nor could it be used in a court of law in a criminal proceeding.
I reiterated that the purpose of my questioning him there was to determine whether or not he had actually been a victim of an abduction. There had been mention of narcotics implications I indicated to him, then requested of him if he wished to file a complaint of having been a victim. He indicated he did not. I asked if he would care to discuss it, having already refused to waive the Miranda warning had there been any criminal proceeding. He indicated, at that time, he would talk to me with the understanding it could not be used in a criminal proceeding.
My intention at that time was to garner information regarding the alleged abduction and narcotics involvement, if any.
Appellee then proceeded to furnish certain details concerning the abduction. During the course of this discussion he made incriminating statements to the effect that he had received two grams of cocaine, of which he retained one gram for himself and gave one gram to another fireman and his wife.
Sergeant Alderson testified that he had attempted to make it clear to appellee that the entire interview would eventually be reported to the Fire Chief. He also testified that he told appellee that he was free to leave at any time. In fact, when appellee indicated that he wished to terminate the interview and that he did not want to discuss the matter any further until he had an opportunity to talk to the other fireman, the interview concluded. Appellee also indicated that if the other fireman was willing, they would assist the police in further investigations into the drug aspects of the situation.
Subsequently, appellee contacted Sergeant Alderson and made an appointment for another meeting. This meeting took place at the home of the other fireman referred to previously. Present were appellee, the other fireman, his wife, and Sergeant Alderson. At that meeting appellee repeated the incriminating statement that he had been in possession of two grams of cocaine, keeping one for himself and giving the other gram to the other fireman and his wife.
Some time later, appellee received a written communication terminating his employment on the basis of violation of Chapter *1317 IV, Section II, Rule 4 of the Fire Department Rules and Regulations, providing that:
No member shall conduct himself, on or off duty, in any way that will tend to bring discredit to the Fire Department or any of its members as a group or individuals.
At the hearing before the Civil Service Board, appellee sought to suppress the incriminating statements as violative of his Fifth Amendment rights. The motion to suppress was denied.
On appeal, the circuit court determined that the motion to suppress should have been granted and that, by virtue of the termination of his employment, appellee was denied his constitutionally protected right to due process of law.
Appellee's legal position on this appeal is that the statements made by him during the interviews may not be used against him as a basis for the termination of his employment by the City of Hollywood because he was interrogated under circumstances giving rise to the protections of the Fifth Amendment. Implicit in this position is the principle that government employment constitutes a property right, loss of which may constitute a penalty or forfeiture. Furthermore, appellee's position includes inferentially the claim that there was an effective grant of immunity which would act as a bar to the testimony of Sergeant Alderson concerning the incriminating statements.
We first turn our attention to the basic question of appellee's rights under the Fifth Amendment to the Constitution of the United States, that is, whether statements made by appellee pursuant to a grant of immunity could be used as the basis for termination of his employment in that context. The self-incrimination clause of the Fifth Amendment, applicable in state proceedings through the Fourteenth Amendment, Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964), provides that no person "shall be compelled in any criminal case to be a witness against himself." The Supreme Court has uniformly held that the right protected here is the right to avoid criminal sanctions. Ullmann v. United States, 350 U.S. 422, 76 S.Ct. 497, 100 L.Ed. 511 (1956). The concept of "criminal" has been slightly broadened under the Federal cases to include juvenile delinquency proceedings which, while not criminal per se, may lead to loss of constitutionally protected freedoms. In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). It has also been established that Fifth Amendment rights may not be circumvented by employing the strategem of a civil proceeding, in which the end result is the substantial equivalent of a criminal sanction. Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886) and Lees v. United States, 150 U.S. 476, 14 S.Ct. 163, 37 L.Ed. 1150 (1893). Garrity v. New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967), and its progeny prohibit the state from obtaining a waiver of immunity by threat of loss of employment. Applying these rules to the issue involved in this case, we hold that appellee has no federally protected right to suppression of the incriminating statements in a proceeding for the termination of his employment. Our holding is more specifically supported by the case of Childs v. McCord, 420 F. Supp. 428 (D.Md. 1976) and the cases reviewed by the Childs court beginning at page 435 of that opinion. The Childs case involved licensed and registered professional engineers charged with professional misconduct. The court held that the engineers' compelled immunized testimony in federal criminal proceedings could be fully utilized in proceedings before the Maryland Board of Registration for Professional Engineers in spite of the fact that the engineers might thereby be deprived of their right to practice as engineers in Maryland. In the case of In re Daley, 549 F.2d 469 (7th Cir.1977), cert. denied, 434 U.S. 829, 98 S.Ct. 110, 54 L.Ed.2d 89 (1977), the United States Court of Appeals for the Seventh Circuit held that a federal prosecutor did not have sufficient authority to grant immunity to an attorney in order to prevent his trial testimony from being utilized in state bar disciplinary proceedings. The case is in some respects distinguishable *1318 from the case at bar, but the principle enunciated by the court has some application here. We have found no precedent of the United States Supreme Court which would require any other result.
We now turn to a consideration of state law. The Florida privilege against self-incrimination is found in Section 9 of Article 1 of the Constitution. Paraphrased, the provision reads that no person shall be compelled in any criminal matter to be a witness against himself. For the most part, Florida cases fall in line with the federal cases, with the exception of the narrowly defined area involving the question of whether immunized testimony may be used in administrative proceedings which might result in the deprivation of a property right of the witness. We immediately distinguish State ex rel. Vining v. Florida Real Estate Commission, 281 So.2d 487 (Fla. 1973), which appellee urges should control the instant case. State ex rel. Vining, involved a statutory requirement that a licensed real estate broker charged with a violation of the real estate license law file a written response, under oath, to the charges. Failure to do so could result in ex parte revocation of the broker's license. There was no element of immunity involved. The constitutional defect of this statutory requirement seems obvious, as does the complete dissimilarity of the issue involved with that at bar.
The cases that are not so readily distinguished deal with immunity. In Florida State Board of Architecture v. Seymour, 62 So.2d 1 (Fla. 1952), the court was confronted with a factual situation requiring an analysis of the applicability of Section 932.29, Florida Statutes (1941). This statute granted immunity under certain circumstances and provided that testimony so immunized afforded protection to the witness to the extent that he could not "be prosecuted, subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he may so testify ..." The court in that case held that the statute provided immunity against administrative revocation of a professional license. Other cases dealing with the same or related issues culminated in July of 1969 with the case of Headley v. Baron, 228 So.2d 281 (Fla. 1969). The court in Headley overruled Seymour, holding that the term "penalty or forfeiture" contemplated by Section 932.29 referred only to a "criminal" penalty or forfeiture. That case was followed by Lurie v. Florida State Board of Dentistry, 264 So.2d 479 (Fla. 4th DCA 1972). This per curiam denial of certiorari resulted in a writ of certiorari to the Supreme Court which held, in Lurie v. Florida State Board of Dentistry, 288 So.2d 223 (Fla. 1973), that the immunity attaching under Section 932.29, Florida Statutes (1967), renumbered Section 914.04, Florida Statutes (1971), prohibits use of immunized testimony in administrative proceedings to revoke a license to practice dentistry. Revocation of such a license was equated with a penalty or forfeiture as contemplated by the statute. The court expressly reinstated the holding in Seymour. Of interest is the following language from the dissenting opinion of the late Justice Drew, concurred in by acting Chief Justice Roberts and Justice Adkins:
It is inconceivable to me, to use only one example, that a law enforcement officer under civil service could be brought before a grand jury or state's attorney, confess to participation in criminal activities and then effectively bar suspension or removal from office and thereafter wear the badge of authority and remain the symbol of the law  and yet, that is what this decision of the majority will permit. The majority opinion can only further deteriorate public respect for the government and those who govern, which, everybody knows has now reached a historic low. Id. at 233-234.
So far as we have been able to determine there has been only one exception engrafted on this rule to date. The Supreme Court has recently eliminated disciplinary proceedings involving attorneys at law from those administrative proceedings to which the immunization statute applies. In Ciravolo v. The Florida Bar, 361 So.2d 121 (Fla. 1978), the court held that immunity from disciplinary proceedings of attorneys at law *1319 could only be granted by order of the Supreme Court. This distinction is grounded upon the power of the Supreme Court with respect to admission and discipline of attorneys and, in turn, upon the separation of powers doctrine.
Until further inroads are made into the administrative immunity doctrine, in light of recent federal cases or until the legislature amends the immunization statute, we are clearly mandated to prohibit the use of immunized testimony in proceedings which could result in the imposition of a penalty or forfeiture depriving the witness of a property right, such as government employment. However, deeming the matter to be of great public importance we hereby certify the following question to the Supreme Court: DOES SECTION 914.04 OF THE FLORIDA STATUTES AND THE SUPREME COURT'S DECISION IN LURIE v. FLORIDA STATE BOARD OF DENTISTRY PROHIBIT THE USE OF IMMUNIZED TESTIMONY TO DISCHARGE A CITY EMPLOYEE?
Having concluded that at least a statutory if not a constitutional right is offended by the use of immunized testimony under the particular circumstances involved in the present case, we turn our attention to the second aspect of appellee's position. That is, whether there was an effective grant of immunity to appellee, Washington.
Immunity from prosecution is a creature of statute. Tsavaris v. Scruggs, 360 So.2d 745 (Fla. 1977). The present statute, Section 914.04, Florida Statutes (1979), provides:
No person, having been duly served with a subpoena or subpoena duces tecum, shall be excused from attending and testifying or producing any book, paper, or other document before any court having felony trial jurisdiction, grand jury, or state attorney, upon investigation, proceeding, or trial for a violation of any of the criminal statutes of this state upon the ground or for the reason that the testimony or evidence, documentary or otherwise, required of him may tend to convict him of a crime or to subject him to a penalty or forfeiture, but no person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he may so testify or produce evidence, documentary or otherwise, and no testimony so given or produced shall be received against him upon any criminal investigation or proceeding.
The statutory language is clear and explicit that immunity results only from compelled testimony before a court having felony trial jurisdiction, a grand jury, or a state attorney. In State v. Powell, 343 So.2d 892 (Fla. 1st DCA 1977), the court held that the immunity granted by Section 914.04 is, by its terms, limited to that specifically stated in the statute. The case law under this and predecessor statutes is equally clear that only those officials specified in the statute are authorized to grant immunity. See Lurie v. Florida State Board of Dentistry, 288 So.2d 223 (Fla. 1973) (county solicitor); State v. Papy, 239 So.2d 604 (Fla. 3d DCA 1970) (grand jury); Holland v. State, 345 So.2d 802 (Fla. 4th DCA 1977) (state attorney). Accordingly, a police officer cannot, under the statute, grant immunity.
In the case at bar appellee had not been served with a subpoena, nor was he at any time in custody. In fact, on the second occasion that he made the incriminating statements appellee was at the home of a friend and Sergeant Alderson was present by invitation. It had been made clear to appellee that anything he said would be reported to his superior, the Fire Chief. Implicit in that fact was the possibility that his employment could be terminated on the basis of any actions disclosed by his statements. It is clear that the Miranda warning given here was unnecessary and the limited immunity discussed by the parties was meaningless and superfluous. Appellee was not compelled to make any statement whatsoever. Appellant can hardly be estopped by the unauthorized attempt to grant the limited immunity disclosed by this record.
Accordingly, we hold that the constitutional rights of appellee were not encroached *1320 upon, that he was afforded due process and that the Florida Immunity Statute had no application to the instant facts.
We quash the order of the Circuit Court and reinstate the findings and order of the Civil Service Board terminating the employment of appellee, Washington.
REVERSED.
ANSTEAD, J., concurs.
LETTS, C.J., concurring specially with opinion.
LETTS, Chief Judge, concurring specially with opinion.
I am glad the majority has agreed to certify the question of whether the Supreme Court's interpretation of Section 914.04 in Lurie v. Florida State Board of Dentistry, supra, is still the law of this State. In that four to three decision only one of the majority remains on the Court and I agree with the dissent terming it a "tragic mistake."
I am also intrigued by the Ciravolo v. The Florida Bar decision, supra. Is it fundamentally fair to say: Dentists can do it but lawyers can't! Suppose this fireman had confessed to arson![1]
Somehow, sometime I remain in hopes that someone somewhere will consider the plight of the innocent taxpayer and at least remove such as James Washington from the public payroll.
NOTES
[1] A dentist forfeits his license under the statute but a fireman has none to "forfeit."