SECURITIES & EXCHANGE COMMISSION, Plaintiff,

v.

Edward M. GILBERT et al., Defendants.

No. 76 Civ. 366.

United States District Court, S. D. New York.

Sept. 15, 1978.

William D. Moran, Regional Administrator, Securities & Exchange Commission, New York City, for plaintiff; Donald N. Malawsky, Douglas P. Jacobs, George A. Schieren, Michael J. Moriarty, New York City, of counsel.

Reavis & McGrath, New York City, for defendant Judson Streicher; William H. Joseph, David C. Birdoff, Victor P. Muskin, New York City, of counsel.

LASKER, District Judge.

In January of 1976, the Securities and Exchange Commission (Commission) brought this action against Judson Streicher charging him with having manipulated the stock of the Conrac Corporation in violation of various provisions of the 1934 Securities and Exchange Act. Shortly after this civil action was commenced, the United States Attorney (U.S. Attorney) for the Southern District of New York began an investigation into possible criminal law violations stemming from the same events which are the subject of the civil suit. Streicher has been notified by the U.S. Attorney that he is a target of the criminal investigation, and grand jury subpoenas have been issued for his records as part of the investigation.

On September 27, 1977, the Commission noticed Streicher's deposition in the civil action for November of 1977. Streicher then moved for a protective order from this court staying all discovery in the civil action pending the conclusion of the related criminal proceedings. The motion was referred, pursuant to 28 U.S.C. § 636(b)(1), for hearing and determination to Magistrate Raby who, on April 14, 1978, granted Streicher a protective order staying civil discovery "until the termination of all parallel criminal proceedings". (Memorandum and Order, p. 7) The Commission now applies to vacate the Magistrate's order as clearly erroneous and contrary to law.

Streicher claims that two evils will result from permitting his deposition in the civil action. First, he asserts, the Commission has actively assisted the U.S. Attorney's office by supplying it with information obtained in civil discovery, and his deposition will be used to circumvent the more restricted discovery rules which apply to criminal proceedings. Second, he argues that he would be put to what he describes as an unconstitutional choice if his deposition proceeds. That is, on the one hand, he will risk self-incrimination if he testifies while, on the other, if he asserts his fifth amendment privilege to remain silent, he may subject himself to an adverse inference by the trier of fact, and thus increase the possibility of legal sanctions which may eventually cost him his broker's license. See 15 U.S.C. § 78o(b)(6).[1]

In his Memorandum and Order, the Magistrate agreed with Streicher that the Commission had "actively assisted" the U.S. Attorney in its criminal investigation. In granting the protective order, however, he appears to have relied primarily on the proposition that Streicher would be put to an unconstitutional choice, in violation of his fifth amendment privilege against self-incrimination, if compelled to choose either "to give evidence against himself or suffer the loss of his ability to pursue his profession." (Memorandum and Order, pp. 5–6) Such a choice, the Magistrate found, had already been declared unconstitutional in *Garrity v. New Jersey*, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967).

The Commission asserts that the Magistrate's finding of fact that the Commission has actively assisted the U.S. Attorney is clearly erroneous. The civil action, it states, was brought independently of the criminal suit with the sole purpose of pro-

---

1. Section 15(b)(6) of the Securities Exchange Act, 15 U.S.C. § 78o(b)(6), gives the Commission authority, in its discretion, to institute an administrative proceeding against an individual who has been enjoined for violation of the securities laws in order to determine what, if any, remedial sanction is necessary to protect the public. The sanctions available range from censure to a total ban on associating with brokers and dealers. The target of such a proceeding is given full notice and hearing rights and the right to appeal the decision of the Commission. See 15 U.S.C. § 78y.

tecting the public from violations of the securities laws and without any design to circumvent the rules of criminal discovery.[2] The Commission also contends that the Magistrate was incorrect as a matter of law in concluding that the circumstances of the deposition would deprive Streicher of the free exercise of his fifth amendment rights.

## I.

### Violation of the Fifth Amendment

In *Garrity v. New Jersey, supra,* 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562, the Supreme Court held that it was unconstitutionally coercive to condition the exercise of the fifth amendment privilege against self-incrimination on the loss of substantial economic interests. The appellants in that case were police officers who were the subjects of a state investigation of traffic ticket "fixing". While the policemen were advised that any statements made in the course of the investigation might be used against them in a criminal proceeding, they were also told that, under a New Jersey statute, failure to answer questions would lead automatically to their removal from office. The Court found that the choice between self-incrimination and job forfeiture was so coercive as to deprive the police officers of a free choice as to whether or not to assert their rights under the fifth amendment.

■ Decisions since *Garrity* have reaffirmed the principle that the right to remain silent cannot be conditioned on the imposition of coercive sanctions. In *Spevack v. Klein,* 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967), the Court held that an attorney who refused to testify at a judicial inquiry and to honor a *subpoena duces tecum* on fifth amendment grounds could not be disbarred. Similarly, in *Lefkowitz v. Cunningham,* 431 U.S. 801, 97 S.Ct. 2132, 53 L.Ed.2d 1 (1977), the Court struck down as unconstitutional a New York statute which required an officer of a political party to waive his privilege against self-incrimination or be removed from office and barred from any other party or public office for five years. See also, *Lefkowitz v. Turley,* 414 U.S. 70, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973); *Gardner v. Broderick,* 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968).

■ All of the invalidated sanctions in the preceding cases share two common characteristics. First, the sanctions imposed were so severe as to be inherently coercive; second, the sanctions followed automatically upon exercise of the right to remain silent. Streicher asserts that his case is covered by the cited decisions because he, too, is threatened with loss of livelihood. For the reasons which follow, we believe, however, that the causal connection between this threat and Streicher's assertion of the fifth amendment privilege at his deposition is too remote to justify reliance on the decisions above.

Streicher acknowledges that loss of employment would not, in this case, automatically follow if he refused to testify at deposition. Nevertheless, he predicts the following chain of events: if he remains silent at the deposition, the Commission will be free to ask the trier of fact to draw an adverse inference from his silence.[3] This adverse inference, in turn, could contribute "in some measure" to the risk that the civil action will result in the issuance of a permanent injunction against Streicher from engaging in any further violations of the securities laws. The issuance of the injunction, in turn, would empower the Commission, under 15 U.S.C. § 78o(b)(6), to sanction Streicher by, at the worst, barring him from associating with a broker or dealer. Streicher contends, and the Magistrate

---

**2.** However, while the Commission represents that the fruits of the civil discovery have not, "as a general practice", (Memorandum of Objections, p. 8) been made available to the U.S. Attorney, it does not concede that it would be improper to permit the prosecutor, like anyone else, to examine transcripts from public depositions, and states that some of these have, in fact, been made available to the government.

**3.** However, whether or not an adverse inference is actually drawn is within the discretion of the trier of fact.

agreed, that even this remote possibility of loss of livelihood was coercive to the point of depriving him of his free choice to remain silent.

The argument is unpersuasive. In *Baxter v. Palmigiano,* 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976), the Supreme Court held that, in the context of a prison disciplinary hearing, it is legitimate to draw an adverse inference when the inference alone is not sufficient to support a finding of guilt. In *Lefkowitz v. Cunningham, supra,* 431 U.S. 801, 97 S.Ct. 2132, 53 L.Ed.2d 1, the Court indicated that the rule in *Baxter* applied to all civil cases:

> ". . . *Baxter* did no more than permit an inference to be drawn in a civil case from a party's refusal to testify. Respondent's silence in *Baxter* was only one of a number of factors to be considered by the finder of fact in assessing a penalty, and was given no more probative value than the facts of the case warranted; here, refusal to waive the Fifth Amendment privilege leads *automatically* and without more to imposition of sanctions." 431 U.S. 801, 808 n. 5, 97 S.Ct. 2132, 2138, 53 L.Ed.2d 1 (1977) (emphasis added).

In the case at hand it seems reasonable to assume that the Commission will offer positive proof in addition to any adverse inference which it may ask the court to draw if Streicher asserts his right to remain silent. Moreover, it is difficult to believe that the Commission can prove its case by a preponderance of the evidence by relying only on such an inference. Accordingly, we conclude that as long as the only immediate sanction for refusal to testify is, as here, the possible raising of an adverse inference which would not, standing alone, support a finding of liability, then the spectre of loss of employment, which even a finding of liability would not automatically cause, does not put Streicher to an unconstitutionally coercive choice. See *United States v. Sloan,* 388 F.Supp. 1062 (S.D.N.Y.1975); *Gellis v. Casey,* 338 F.Supp. 651 (S.D.N.Y.1972).

Indeed, if Streicher's theory prevailed, it would unacceptably foreclose all discovery against a party in a civil action when that party's conduct could also give rise to criminal liability. We agree with the court in *DeVita v. Sills,* 422 F.2d 1172 (3d Cir. 1970), which was presented with a similar claim, that such an argument proves too much:

> ". . . If, for example, the charge against an attorney was embezzlement of a client's funds, acceptance of plaintiff's position would require that the wronged client await the completion of a criminal trial before he sought a civil recovery, because of the possible compulsion of the risk of a judgment. The same would be true of every defendant in a wrongful death action; of many taxpayers; of most antitrust defendants." 422 F.2d 1172, 1178.

Moreover, such a curtailment of civil actions would be indefensible in a context where, as here, a federal agency has been specifically charged to protect the public through civil enforcement actions. As the Supreme Court noted in *United States v. Kordel,* 397 U.S. 1, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970), the initiation of a civil suit cannot be made contingent on the conclusion of a criminal action when the public welfare is at stake:

> ". . . The public interest in protecting consumers throughout the Nation from misbranded drugs requires prompt action by the agency charged with responsibility for administration of the federal food and drug laws. But a rational decision whether to proceed criminally against those responsible for the misbranding may have to await consideration of a fuller record than that before the agency at the time of the civil seizure of the offending products. It would stultify enforcement of federal law to require a governmental agency such as the FDA invariably to choose either to forgo recommendation of a criminal prosecution once it seeks civil relief, or to defer civil proceedings pending the ultimate outcome of a criminal trial." 397 U.S. 1, 11,

90 S.Ct. 763, 769 (1970) (footnote omitted)[4]

See also, *DeVita v. Sills, supra,* 422 F.2d 1172 at 1178.

## II.

*Cooperation Between the Commission and the U.S. Attorney*

 Even if the continuation of civil discovery does not violate Streicher's fifth amendment rights, the court would be justified in granting a protective order under the Due Process Clause or in its discretion under Rule 26(c) of the Federal Rules of Civil Procedure if the degree of cooperation between the Commission and the U.S. Attorney's office was unduly burdensome or unfair to Streicher. See *United States v. Kordel, supra,* 397 U.S. 1, 10–11, 90 S.Ct. 763, 25 L.Ed.2d 1; *Gellis v. Casey, supra,* 338 F.Supp. 651. While the Magistrate found that the Commission had "actively assisted" the U.S. Attorney (Memorandum and Order, p. 2), there is no evidence in the record that the civil proceeding was brought solely to obtain evidence for the criminal prosecution, Cf. *United States v. Proctor & Gamble Co.,* 356 U.S. 677, 683–84, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958); *United States v. Pennsalt Chemicals Corp.,* 260 F.Supp. 171 (E.D.Pa.1966); or, indeed, that the Commission has made available to the prosecutor anything more than documents available to the public at large. Accordingly, we find that the conduct of the Commission does not justify a protective order on this ground. However, to prevent the possibility of abuse, the Commission is ordered not to furnish the U.S. Attorney specially with any information procured in the course of discovery in this case. The U.S. Attorney is, of course, free to view any material generally available to the public through the same means a member of the public would employ.

For the reasons stated above, the motion to vacate the protective order is granted.

It is so ordered.

---

**4.** We do not agree with the Magistrate that *Kordel* supports Streicher's request for a protective order. (Memorandum and Order, p. 6) The Court stated in dictum in *Kordel* that if no officer of a corporation could answer interrogatories addressed to the corporation without a "real and appreciable" risk of self-incrimination, 397 U.S. 1, 9, 90 S.Ct. 763, 25 L.Ed.2d 1, then the appropriate remedy would be a protective order under Rule 30(b), F.R.Civ.P. However, this statement is directed to the special problem faced by an official of a corporation who, possessing self-incriminating information, has no choice but to reveal such information while answering questions on behalf of the corporation which has no fifth amendment privilege. Here, no such dilemma is presented since Streicher is personally protected by the fifth amendment.