**UNITED STATES of America, Plaintiff,**

**v.**

**ONE 1985 PLYMOUTH COLT VISTA VIN JP3BG49D2FZ708241, Defendant.**

**No. 85 C 8159.**

United States District Court, N.D. Illinois, E.D.

Oct. 7, 1986.

James Kubick, Asst. U.S. Atty., Chicago, for plaintiff.

Thomas Anthony Durkin, Janis D. Roberts, Chicago, for defendant.

MEMORANDUM OPINION
AND ORDER

SHADUR, District Judge.

In this 21 U.S.C. § 881(a)(6) ("Section 881(a)(6)") proceeding, the United States (sometimes referred to that way, and sometimes as the "government," in this opinion) seeks forfeiture of a 1985 Plymouth Colt Vista (the "Plymouth") as proceeds[1] of a violation of the Controlled Substances Act, 21 U.S.C. §§ 801–904. After the government had responded to the Fed.R.Civ.P. ("Rule") 56 summary judgment motion of claimant Wesley Taylor ("Taylor") by filing its own cross-motion for summary judgment, Taylor has sought to withdraw his initial Rule 56 motion and now asks alternatively for a stay under Rule 56(f) or for dismissal under Rule 41(b). For the reasons stated in this memorandum opinion and order, all Taylor's motions are denied, and he is ordered to respond to the government's summary judgment motion on or before October 20, 1986.

*Background*

On April 15, 1985 Taylor was arrested on a magistrate's warrant, charged with conspiring to possess and distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846, and the Plymouth was seized. Although the government dismissed its criminal complaint against Taylor before a preliminary hearing on the charges, it filed its complaint for forfeiture of the Plymouth under Section 881(a)(6) (emphasis added):

**1.** Section 881(a)(6) uses the term "proceeds" in its normal plural-noun sense. To speak of the Plymouth as "a proceed" is certainly an awkward locution (listed by Webster's Third International Dictionary as "archaic"), and this opinion will therefore adhere to the statutory usage.

**2.** Those government interrogatories requested information about: (1) witnesses to any of the facts giving rise to the action, (2) persons to be called as witnesses at trial, (3) Taylor's sources of income since January 1, 1981, (4) whether Taylor or his spouse had filed tax returns since 1981 and, if not, why and (5) persons with

(a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:

\* \* \* \* \* \*

(6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, *all proceeds traceable to such an exchange,* and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violations of this subchapter....

When the government later served interrogatories and a notice of deposition on Taylor during the discovery stage of this action,[2] he refused to answer and filed a motion to stay discovery, alleging the government was attempting to discover facts that might be used against him in criminal proceedings. In response the government filed a motion to compel discovery.

On April 9, 1986, in an oral bench ruling, this Court denied the government's motion and ordered it to file a statement establishing probable cause ("Probable Cause Statement") for seizure of the Plymouth. It did so May 2, 1986. Ten days later Taylor filed a statement in response, along with his now-withdrawn summary judgment motion. This opinion's first paragraph has outlined the ensuing procedural steps.

*Positions of the Parties*

According to the government, it has established probable cause for forfeiture[3] by establishing both Taylor's involvement in

whom Taylor had communicated regarding the case.

**3.** As part of the forfeiture laws relating to transactions in contraband, Section 881(d) incorporates by reference all the provisions of like forfeiture statutes in customs proceedings. One of those statutes is 19 U.S.C. § 1615 ("Section 1615"), which places the burden of proof on the claimant after "probable cause shall be first shown for the institution of such [forfeiture] suit or action...."

drug trafficking and his lack of any source of money for the Plymouth other than drug sales (noting Taylor has not filed tax returns since 1978). Because Taylor has failed to rebut that showing of probable cause, the government contends summary judgment is appropriate.

. Rather than attempting to contradict the government's evidence, Taylor submits the affidavit of his counsel, Thomas Anthony Durkin ("Durkin"), invoking Rule 56(f):

Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Durkin Aff. ¶ 7 states his professional opinion that Taylor can "neither pursue his claim nor submit a substantive affidavit in opposition to the government's Cross Motion for Summary Judgment, without potentially incriminating himself with respect to his alleged failures to file income tax returns."

In that light Taylor seeks a 90–day stay to permit the government either:

(a) to obtain immunity for Taylor from prosecution under federal and state law or

(b) to obtain certifications from both federal and state prosecutors, guaranteeing neither will prosecute Taylor,

for any offenses in any way related to the incidents underlying the forfeiture action. If the government is unwilling or unable to do so, Taylor asks for dismissal under Rule 41(b):

For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him.

*Probable Cause*

Section 1615 places the burden of proof on a claimant (in this case Taylor) once the government establishes probable cause for the institution of forfeiture proceedings. Thus an examination of the probable cause issue is necessarily the appropriate place of beginning:

1. If the government has not established probable cause for forfeiture, this action must be dismissed and this Court need not reach the Fifth Amendment self-incrimination issue.

2. If probable cause *has* been shown, it becomes necessary to decide whether Taylor, to meet his burden of proof, must incriminate himself (if not, there is no "Fifth Amendment dilemma") (Taylor Mem. 6[4]).

3. Finally, if this Court finds Taylor can defend against forfeiture only by making statements that would incriminate him in a potential criminal prosecution for tax evasion, it becomes necessary to determine how that affects the current lawsuit.

As the government's invocation of Section 881(a)(6) indicates, its basis for seeking the forfeiture of the Plymouth is as "proceeds" from an illegal drug transaction. Hence the government must establish probable cause for its belief the Plymouth was purchased with money derived from the sale of controlled substances ("drug money"). For that purpose "probable cause" means a "reasonable ground for a belief of guilt, supported by less than prima facie proof but more than mere suspicion." *United States v. One 1979 Porsche Coupe*, 709 F.2d 1424, 1426 (11th Cir.1983); *United States v. One 1981 Cadillac Eldorado*, 535 F.Supp. 65, 66 (N.D.Ill.1982).

In this case the government relies on information obtained through an FBI investigation, as summarized in an affidavit

---

4. Taylor submitted two memoranda: one filed July 10, 1986 in support of his initial Rule 56 motion, the other filed July 25 when he shifted to seeking the stay and alternative relief described in the text. Because the memoranda are essentially identical (they differ only by insertion of three paragraphs at pages 5–6 of the second memorandum), this opinion will cite only to the second memorandum (cited simply "Mem.—").

from FBI Agent Paula J. Brand ("Brand Aff.") and three exhibits.[5] All the government's information pivots on the relationship between Taylor and his common-law brother-in-law [6] Roosevelt Daniels ("Daniels"), who is now under indictment and awaiting trial on federal narcotics charges (Brand Aff. ¶¶ 2, 5). In the following factual recital, all matters stated in Brand's affidavit (uncontroverted at this point) are accepted as true and as having been known to the government when the Plymouth was seized.

Daniels employs Taylor to purchase and manage real properties used to conduct illegal drug transactions (*id.* ¶ 5). For example, in March 1985 Taylor bought two Chicago buildings for Daniels' use in conducting his drug business, and Taylor drove the Plymouth in connection with negotiations over the purchase of those buildings (*id.* ¶ 15; Ex. C [7]).

Taylor also bought the Salute Bar and Uncle Charlie's Restaurant in Chicago under his own name but with funds from Daniels' drug business (Brand Aff. ¶ 8). Uncle Charlie's Restaurant was purchased with $22,000 in cash, each $1,000 of which was bound with a rubber band (*id.* ¶ 9). Brand Aff. ¶ 10 says:

> [I]t is the custom and practice of persons trafficking in illegal drugs to transact business in cash and to keep the proceeds

of such transactions in $1,000 packets of money secured by rubber bands.

"Reliable sources" have stated drugs and large amounts of cash ($30,000) were stored in a safe in the Salute Bar in July 1984 and at other times (*id.* ¶ 11). Taylor knows the combination to the safe (*id.* ¶ 12).

Daniels is also the source of cash used to purchase at least 18 automobiles registered in the names of others, including family members and employees (*id.* ¶ 2). Several of those automobiles were purchased from Irving Park Chrysler/Plymouth, Inc. ("Irving Park Plymouth") (*id.* ¶ 3). Daniels installed mobile telephones in his own car and those of four employees of his drug operation (*id.* ¶ 13). Taylor used cash to buy the Plymouth from Irving Park Plymouth (the purchase price was $12,358.50) (*id.* ¶ 6; Ex. A. [8]), and the Plymouth too is equipped with a mobile telephone (Brand Aff. ¶ 14).

Internal Revenue Service records reflect no tax returns filed by Taylor since 1978 (*id.* ¶ 17). Taylor "has no known sources of income" that could have been used to purchase the Plymouth other than drug money (*id.* ¶ 16).

That evidence, the government contends, provides reasonable grounds for its belief Taylor bought the Plymouth with drug money. Admittedly it is not proof beyond

---

**5.** Brand's affidavit, attached to the government's General Rule 12(e) statement of material facts as to which it contends there is no genuine issue, is limited to information known to Brand before the April 15, 1985 seizure of the Plymouth. In its May 2, 1986 Probable Cause Statement, the government had included evidence that became known to it only *after* the Plymouth was seized—evidence challenged on that ground in Taylor's now-withdrawn summary judgment motion. There is an interesting divergence between the statutes on that score. Section 1615 (emphasis added) says "probable cause shall be first shown for the *institution* of such suit or action ..."—which at least facially might be read as a reference to information known when suit is brought. By contrast, Section 881(b)(4) permits *seizure* without court process of "[a]ny property subject to forfeiture ... when ... the Attorney General has probable cause to believe that the property has been used ... in violation" of the statute. Because the

government has now chosen to rely only on evidence acquired before the seizure, this Court need not address the question whether property whose seizure could have been (but was not) quashed for lack of probable cause at that time could later be forfeited on the strength of after-acquired information.

**6.** If the term "common-law wife" is not viewed as internally inconsistent, presumably the text's usage is equally passable.

**7.** Ex. C is a transcription of a March 28, 1985 interview conducted by three FBI agents with Phillip Rothmeir, who sold the two buildings to Taylor.

**8.** Ex. A comprises the sales receipts from the car dealer. They show Taylor made four separate cash payments: $9,000 on March 7, 1985, $1,000 on March 18, $1,000 on March 26 and $1,358.50 on April 3.

a reasonable doubt. Even if Taylor were involved in drug trafficking, for example, he could quite conceivably have had another unknown source of income—unrelated to drug sales—from which he earned enough money to buy the Plymouth, or he might have had other sources of funds (nontaxable, or taxable before 1978) that could have been used for the same purpose.[9] Naturally, such an alternative explanation would be less plausible if the "proceeds" were a very large sum of currency rather than the $12,358 auto involved in this case (see, e.g., *United States v. $364,960 in U.S. Currency*, 661 F.2d 319, 324 (5th Cir.1981)).

■ But the government does not have to prove its case beyond a reasonable doubt. It need have only a "reasonable belief" rather than "mere suspicion" the Plymouth was purchased with drug money. Here there was substantial circumstantial evidence linking Taylor to Daniels' drug operation, together with (1) the fact the Plymouth was bought with cash (itself of a nature circumstantially connected with drug operations), (2) evidence eliminating the likelihood of a source of money for the purchase other than drug sales and (3) such inferentially corroborative evidence as the installation of a mobile telephone in the Plymouth. It cannot be said the government had only a "mere suspicion" the Plymouth was purchased with drug money. This Court finds the government's belief was a reasonable one, based on all the evidence it had. Accordingly the government has probable cause for the forfeiture.

### Self-Incrimination

■ With probable cause for forfeiture thus established, the burden of proof shifts to Taylor to show by a preponderance of the evidence the Plymouth was not purchased with drug money and so does not constitute "proceeds" under Section 881(a)(6). *United States v. Fleming*, 677 F.2d 602, 609 (7th Cir.1982). Obviously Taylor has not met that burden, for he has not even attempted to contradict evidence

set out in the Brand affidavit. That would ordinarily compel entry of summary judgment against Taylor. *United States v. Little Al*, 712 F.2d 133, 136–37 (5th Cir.1983) ("If unrebutted, a showing of probable cause alone will support a forfeiture").

Taylor urges the burden should not be his because he could meet it only by incriminating himself. Whether that is necessarily true is a question neither side has dealt with seriously, but one this Court must now address. After all, if Taylor can rebut the probable-cause evidence *without* incriminating himself, he must certainly do so.

Taylor Mem. 5 notes the "critical allegations" in the government's Probable Cause Statement he has failed to contradict:

10. Wesley Taylor has no known sources of income which could have been used to purchase the defendant vehicle other than monies he received as compensation for his work on behalf of the Roosevelt Daniels drug organization.

11. The Internal Revenue Service has no record of income tax returns having been filed by Wesley Taylor since 1978.

Those allegations, Taylor's Motion To Dismiss 2 urges, constitute "the government's entire case for forfeiture ..." (see also Durkin Aff. ¶ 6). To refute the government's case and meet his burden of proof, Taylor Mem. 5 says he must either testify or submit an affidavit concerning his sources of income during the past several years. That is said to be so because (*id.*) "[o]nly the Claimant, as opposed to other witnesses, can provide definitive information concerning these matters."

Were he to provide such information, Taylor Mem. 6 says he would "run the risk of incriminating himself with respect to his alleged failure to file tax returns since 1978." That assertedly poses his "Fifth Amendment Dilemma" (*id.*), which can be solved only in one of three ways (*id.* at 11):

1. a grant of immunity;

9. That kind of analysis, for example, is the reason networth income tax prosecutions must always negate possible sources of funds other than taxable income for the years in question.

2. a guaranty he will not be prosecuted for "any offenses in any way related to the incidents underlying the forfeiture action"; or

3. dismissal of this case.

Government R.Mem. 3 disagrees, saying Taylor "boldly asserts without explanation that 'only the claimant, as opposed to other witnesses, can provide definitive information concerning these matters,'" without showing why other witnesses or documents or both are unavailable to rebut the showing of probable cause.

Taylor is clearly wrong in saying the government's case is based entirely on the assertion he has no known source of money other than drug sales. That evidence *combined* with evidence of Taylor's involvement in drug transactions creates probable cause. Had the government merely pointed to the absence of any known source of money for the Plymouth, that would not ground a reasonable belief Taylor bought the Plymouth with drug money, as opposed to funds from some other source.

Thus Taylor could seek to rebut the government's case and meet his burden of proof by showing either (1) he was not involved in drug trafficking or (2) he had other sources of funds, unrelated to drug sales, that provided the Plymouth's purchase price. Of course, Taylor's offering evidence in support of the first of those matters poses no self-incrimination problems. And were he thus able effectively to overcome the government's circumstantial evidence connecting him to drug trafficking, he would sustain his burden of proof, for Section 881(a)(6) could not come into play at all.

If, however, Taylor cannot negate the evidence of his involvement in drug trafficking, he must tender evidence of other (not drug-related) sources of funds from which the money for the Plymouth could

have come.[10] This Court will give Taylor the benefit of the doubt by crediting his statement that only he possesses such information, so he himself would have to testify or provide an affidavit as evidence. Indeed, even on the government's suggestion that documents or witnesses could be presented to establish other sources of funds, Taylor would still be presenting the evidence and vouching for its veracity. Perhaps most importantly, the information (unless of a type referred to in n. 10) could still be used against him in a tax evasion lawsuit.

Accordingly this Court is required to reach the final question: On the assumption Taylor must incriminate himself as to his alleged failure to file tax returns to meet his burden of proof, should this forfeiture suit be dismissed if the government refuses to grant Taylor immunity so he is able to present his proof free of risk? For the reasons discussed in the remainder of this opinion, the answer is "no."

At the outset, Taylor is correct in saying he may properly call upon the Fifth Amendment: He may refuse to disclose his receipt of taxable income if that information would incriminate him. Because disclosure of such information in this forfeiture action could be used against him in a separate and unrelated *criminal* suit brought for tax evasion, Taylor need not rely solely on cases (Taylor Mem. 8) holding the Fifth Amendment privilege against self-incrimination has been invoked and upheld in forfeiture actions.

■ That, however, is simply the first and easiest step in the analysis. It leads to the potentially more difficult question: whether this Court would impermissibly penalize Taylor's exercise of that right by granting summary judgment against him. But Taylor's "Fifth Amendment Dilemma"

---

**10.** Again to take a leaf from the net-worth-case notebook, taxable income is obviously not the only potential source of funds. Gifts, inheritances, tax-exempt receipts and preexisting savings are all examples of the kinds of assets the government must typically negate in net worth prosecutions. By the same token, the need for Taylor to prove a non-drug-related source of funds does not necessarily equate with his need to prove he had *taxable* income during the years beginning with 1978—and hence does not necessarily implicate him in a criminal failure to file tax returns.

argument does not withstand closer examination. This Court finds that claimed dilemma does not force the government to grant Taylor immunity or a guaranty he will not be prosecuted for alleged tax evasion.

*United States v. Rylander,* 460 U.S. 752, 759, 103 S.Ct. 1548, 1553, 75 L.Ed.2d 521 (1983) teaches Taylor's "dilemma" is really no different from that faced by every criminal defendant forced to choose between complete silence and presenting a defense. By choosing silence the defendant incurs the risk the government, if it satisfies its burden of proof, will prevail. Yet that has never been thought to violate the privilege against self-incrimination (*id.,* quoting *Williams v. Florida,* 399 U.S. 78, 83–84, 90 S.Ct. 1893, 1896–1897, 26 L.Ed.2d 446 (1970)).

To be sure, the burden of proof on the government in a forfeiture action is merely one of probable cause, rather than proof beyond a reasonable doubt as in a criminal case. *Rylander,* however, shows that difference is not of constitutional dimension. There the government, in a contempt proceeding, had to show nothing more than Rylander's noncompliance with a court order. It did so. Asserting his privilege against self-incrimination, Rylander then failed to sustain his burden of coming forward with detailed evidence showing why he was unable to comply. *Rylander,* 460 U.S. at 758, 103 S.Ct. at 1553 (citations omitted) said:

But while the assertion of the Fifth Amendment privilege against compulsory self-incrimination may be a valid ground upon which a witness such as Rylander refuses to answer questions, it has never been thought to be in itself a substitute for evidence that would assist in meeting a burden of production. We think the view of the Court of Appeals would convert the privilege from the shield against compulsory self-incrimination which it was intended to be into a sword whereby a claimant asserting the privilege would be freed from adducing proof in support of a burden which would

otherwise have been his. None of our cases support [sic] this view.

We have squarely rejected the notion, apparently subscribed to by the Court of Appeals, that a possible failure of proof on an issue where the defendant had the burden of proof is a form of "compulsion" which requires that the burden be shifted from the defendant's shoulders to that of the government.

Rather than attempting to distinguish *Rylander,* Taylor points to the reasoning and outcome in *United States v. U.S. Currency,* 626 F.2d 11 (6th Cir.), *cert. denied sub nom. Gregory v. United States,* 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 290 (1980). There the government, during the discovery stage of a forfeiture suit for gambling proceeds, served interrogatories on the claimants seeking details relating to their involvement in a gambling operation. Had the claimants provided that information, the government could have used it both to meet its burden of proof in the forfeiture suit and to prosecute the claimants in a separate criminal proceeding for gambling. On appeal the trial court was reversed for having dismissed the suit without first attempting to accommodate both the claimants' Fifth Amendment interest and the government's interest in enforcing the forfeiture statute.

That situation was paralleled earlier in this action, when the government sought incriminating information from Taylor via interrogatories (see n. 2). This Court stayed discovery to preclude the government from doing so. Had that rendered the government unable to meet its burden of showing probable cause in this forfeiture suit, this Court would have had to confront the possible dismissal dealt with in *U.S. Currency.* But *Rylander* controls the entirely different posture of this case now, coming *after* the government has established probable cause through its own investigative efforts. Under these circumstances the earlier-quoted language from *Rylander* becomes directly apropos.

That is not to say this Court could not attempt to accommodate Taylor's interest

against self-incrimination so long as (in *Rylander* terms) he did not "convert the privilege from [a] shield ... into a sword...." However, Taylor has not suggested any reasonable means for such accommodation.

One such proposal—the grant of immunity or a guaranty Taylor will not be prosecuted for *any* offenses in *any way* related to the incidents underlying the forfeiture—is plainly unacceptable. Were that route taken, Taylor could at his own option provide incriminating information about, and thereby insulate himself against prosecution for, not only his alleged tax law violations but also his alleged involvement in drug trafficking—all at the price of an auto now worth considerably less than its original price of $12,358.

Taylor's alternative proposal, dismissal of the action, is also inappropriate: It is Taylor and not the government who has failed to sustain the burden of proof. *Rylander* teaches the privilege against self-incrimination is not a substitute for evidence. Thus Taylor must respond to the government's summary judgment motion. If he can do so without incriminating himself, by rebutting evidence of his involvement in drug trafficking, or perhaps by providing information about other sources of funds, so much the better. If not, Taylor will have to choose between maintaining his silence and defending against this forfeiture.

### Conclusion

Taylor's alternative motion to stay or to dismiss is denied. Taylor is ordered to respond to the United States' summary judgment motion on or before October 20, 1986. This action is set for a status date (and probable disposition of the United States' motion) October 30, 1986 at 9 a.m.